AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Kansas

In the Matter of the Search of:
*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH THE FACEBOOK ACCOUNT:
URL:http://www.facebook.com/bro.bro.6969
User ID: 100044568663151
Account Name: Bro Bro
THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. and is further described in Attachment A.

}
}
}
}
}

Case No.   24-6081-BGS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

INFORMATION ASSOCIATED WITH THE FACEBOOK ACCOUNT:  URL:http://www.facebook.com/bro.bro.6969; User ID: 100044568663151 Account Name: Bro Bro; THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. and is further described in Attachment A.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | receipt, possession, production, or distribution of obscene visual representations of the sexual abuse of children |
| 18 U.S.C. 2252 | |
| 18 U.S.C. 2252A | |

The application is based on these facts:

See Attached Affidavit

✓ Continued on the attached sheet.

Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brittany A. Bayles, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   3/22/24

*Judge's signature*

City and state:  Wichita, Kansas

HONORABLE BROOKS G. SEVERSON, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Facebook account as follows:

> URL:**http://www.facebook.com/Bro.Bro.6969**
> User ID: **100044568663151**
> Account Name: **Bro Bro**

that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a

company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for each user ID listed in Attachment A:

a.    All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b.    All activity logs for the account and all other document showing the user's posts and other Facebook activities;

c.    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

d.    All profile information; News Feed information; Status updates; links to videos, photographs, articles, and other items; notes; wall postings; friends lists, included the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the suer's access and use of Facebook applications;

e.    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.    All "check ins" and other location information;

g.    All IP logs, including all records of the IP addresses that logged into the account;

  h.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

  i.  All information about the Facebook pages that the account is or was a "fan" of;

  j.  All past and present lists of friends created by the account;

  k.  All records of Facebook searches performed by the account;

  l.  The types of service utilized by the user;

  m.  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

  n.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

  o.  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## I. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A, involving Austin Glenn Brom including, for the account or identifier listed on Attachment A, information pertaining to the following matters:

  a.  Any and all communications related to the crimes under investigation;

  b.  Evidence indicating the Facebook account owner's state of mind or motivation as it relates to the crimes under investigation;

  c.  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

d.    The identity of the person(s) who sent to and/or received communications from the Facebook account regarding matters referenced in (a) above, including records that help reveal whereabouts.

IN THE UNITED STATES FOR DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**IN THE MATTER OF THE SEARCH OF**
**INFORMATION ASSOCIATED WITH**
**FACEBOOK ACCOUNT:**

**Case No.**   24-6081-BGS

**URL:http://www.facebook.com/bro.bro.6969**
**User ID: 100044568663151**
**Account Name: Bro Bro**

**THAT ARE STORED AT PREMISES**
**CONTROLLED BY META PLATFORMS, INC.**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brittany A. Bayles, Special Agent of the Federal Bureau of Investigation, being first duly

sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I have been employed as a Special Agent of the FBI since February 2022. I am

currently assigned to the FBI Kansas City Division, Wichita Resident Agency. As a Special Agent

of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law

enforcement officer with authority to execute arrest and search warrants under the authority of the

United States, including violations of Title 18, United States Code § 2251, United States Code §

2252, and United States Code § 2252A. I have participated in a wide variety of criminal

investigations, to include violent crime, crimes against children, human trafficking, major theft,

and other federal crimes. I have participated in the preparation and execution of many search

warrants, including, but not limited to, those involving the sexual exploitation of minors and

certain activities relating to material constituting or containing child pornography.

2.      The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

3.   As will be shown below, there is probable cause to believe that the information associated with the Facebook account URL:http://www.facebook.com/bro.bro.6969; User ID: 100044568663151; Account Name: Bro Bro as described in Attachment A will contain evidence of the receipt, possession, production, or distribution of obscene visual representations of the sexual abuse of children, in violation of Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A. I submit this application and affidavit in support of a search warrant authorizing the search of the Facebook Account described in Attachment A. I seek authorization to seize and examine evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the aforementioned criminal violations, and as further described in Attachment B.

**INVESTIGATION/PROBABLE CAUSE**

4.      Highly summarized, this investigation involves a CyberTip and undercover contact that connects to **AUSTIN GLENN BROM (BROM)**.

5.      On September 27, 2021, Kansas Internet Crimes Against Children Unit (ICAC) in Wichita, Kansas began an investigation into BROM after receiving a CyberTip from the National Center for Exploited and Missing Children (NCMEC). A CyberTip was received by NCMEC for child pornography found to be maintained in the Facebook account associated with BROM.

6.      The CyberTip contained two videos that were uploaded by BROM's Facebook account (Username: Austin Brom, Associated Email: bromaustin459@gmail.com) including a 45 second video of a prepubescent female penetrating her vagina with what appears to be a pen. The second video is 38 seconds in length and depicts an adult male having sexual intercourse with a prepubescent female.

7.      The phone number identified on the Facebook account was **(316) 364-0650**. This number was later determined to be associated with Brom as set forth in the following paragraphs. Through ICAC's investigation, an IP address utilized to access BROM's Facebook account resolved to 1838 S Topeka Street, Wichita, Kansas 67211. This residence belongs to BROM's mother, Melissa Poston (Poston).

8.      As part of the investigation, ICAC detectives spoke with Poston at her residence. Poston advised BROM did not live with her but has stayed the night with her on occasion. Poston did not know where BROM was living as he does not have a vehicle and has a history of drug use.

### The Undercover connects to Kelly's residence

9.      Sometime in February 2023, a FBI online covert employee (OCE) in San Francisco, CA, joined a public Kik group "Family Fun" (#family.fun.allage) portraying a mid-30-year old mother of two purported minor daughters. Within this public Kik group, sexual exploitation of minors was discussed.

10.     On or about February 23, 2023, Kik user "entombed by" (display name: It's Me!), who was already a member of this group, engaged the OCE in private messaging. The user, later identified as Brom (BROM), told the OCE he was a 31-year-old male named Justin who lived outside of Topeka, Kansas. He also told the OCE he had a 14-year-old daughter.

11.     On or about February 23, 2023, the OCE asked BROM if he was active with his "lil" (referring to his daughter). BROM stated, "I wish." The OCE and BROM began discussions about the OCE's purported daughters. BROM asked how old the OCE's daughters were, and she told BROM 7 and 9. The OCE asked if that was too young and BROM replied, "Not at all." BROM went on to describe putting his "cock" in their mouths and how he wanted the girls to enjoy it. BROM continued discussing the sexual things he would do to the girls. BROM stated he would rather not use a condom but would use flavored lube for the girls to taste. The two then began discussing BROM traveling to California to exploit the OCE's purported daughters. BROM inquired about how long he could stay and the two discussed where he would stay. BROM advised he would like to stay at the OCE's house and have the girls in their bed or in the OCE's bed. They agreed on BROM staying in a hotel to begin. BROM advised he would need to plan the trip in advance and would like at least three days with them and be naked the entire time. BROM proposed the idea of planning a trip "next month" to California.

12.     On or about March 5, 2023, BROM sent an image to the OCE. The image depicted a prepubescent female's genitals exposed with a penis ejaculating onto the female genitals.

13.     On or about March 29, 2023, BROM told the OCE, "I was chatting with a 13 yr. old the other night and she was sending me videos of her doing whatever I told her to do. It was so hot." BROM further stated, "It made me wish I could be with your girls while you watch." BROM advised he met the 13-year-old on Kik. He stated he had her "Slapping her clit. Fucking her pussy and tasting her pussy on her fingers." BROM asked the OCE if she wanted to see and proceeded to send the OCE two images and four videos. One image depicted an undetermined age female with her buttocks and genitalia exposed. The second image depicted an undetermined age female with her breasts exposed. Two of the videos depict an undetermined age female digitally

penetrating her vagina and then putting her fingers in her mouth. The other two videos depict an undetermined age female rubbing her genitalia with her fingers. After receiving the videos, the OCE asked, "She's only 13" and BROM replied, "That's what she told me." BROM proceeded to send the OCE a video depicting a male masturbating to pornography on the television in the background.

14.     Within the timeframe of communications with the OCE, the BROM utilized an IP address that returned to Cox Communications on multiple occasions. Cox Communications is a known provider of non-mobile residential internet service.

15.     On or about April 26, 2023, Cox Communications provided the following information for the account tied to IP address 68.103.177.126, utilized by Kik user "entombed_by" pursuant to a subpoena:

> Market: Kansas
> Name: Justin Kelly
> Address: 1658 South Fern Street, Apt 202, Wichita, Kansas 67213-3676
> Home Phone: 316-365-0781
> Customer Status: Active

16.     This information indicated BROM was likely a person residing, or in regular contact, with the residence of Justin Kelly (Kelly). Investigators were able to confirm that BROM and Kelly were associated as set forth in paragraph 20.

17.     A search warrant was served to KIK account "entombed_by." KIK provided records for the account indicating Kelly was not the user of "entombed_by." BROM was subsequently identified as the user through photographs and tattoos.

18.     A subpoena was served on T-Mobile for the phone number associated with the IP address - phone number (316) 365-0781. T-Mobile provided subscriber information for Kelly.

Within the records, a top contact of Kelly's was (316) 364-0650, which was the number linked to Brom's Facebook account in 2021 as set forth in paragraph 7.

19.     As part of the investigation, ICAC detectives spoke with Poston at her residence. Poston advised BROM did not live with her but has stayed the night with her on occasion. Poston did not know where BROM was living as he does not have a vehicle and has a history of drug use.

### BROM connects to Justin Kelly's residence

20.     On or about October 5, 2022, BROM was arrested by the Wichita Police Department for a drug violation. During this encounter, BROM was found to be in possession of a maroon 2002 Buick Le Sabre bearing Kansas license plate '982RGH'. The vehicle is registered to Justin Kelly at 538 N McComas, Apt 3, Wichita, Kansas 67203. This address was listed as a previous residence of BROM and another common associate of Kelly and BROM.

21.     On or about March 8, 2023, MediaLab Inc. provided the following information for Kik username "entombed_by" (display name: It's Me!) pursuant to a subpoena:

> First name: It's
> Last Name: Me!
> Email: ibeawesome@gmail.com
> User Location: US (IP: 75.243.245.114)
> User Location Timestamp: 2023/03/08 18:20:57 UTC
> Registration Timestamp: 2022/04/08 15:15:44 UTC
> Phone Type: Android Brand
> Motorola Model: Moto g power (2021)
> Birthday: 1991-04-08
> Recent IP Activity:
> 75.243.245.114 2023/03/07 23:52:00 UTC (Verizon)
> 174.213.193.36023/03/07 06:00:28 UTC (Verizon)

This information indicated the SUBJECT was using a mobile device associated with Verizon.

22.     On or about March 24, 2023, Google provided the following information for Google account identifier ibeawesome@gmail.com pursuant to a subpoena:

Google Account ID: 291041225976
Name: John Proctor
E-mail: ibeawesome@gmail.com
Created on: 2007-10-10 07:18:49 Z1
Terms of Service IP: 146.244.190.97
Services: Gmail, Google Hangouts
Last Updated Date: 2008-4-15 15:12:29 Z
Last Login 2007-12-12 08:39:52 2007-12-09 07:11:48 Z, 2007-11-16 02:04:23 Z
Recovery E-mail: none provided
Recovery SMS: none provided
IP Activity: No User IP Logs

23.     Investigators obtained subscriber information for Kelly's phone number and observed that a top/frequent contact for Kelly was the phone number associated with BROM, identified as (316) 364-0650. This indicated BROM had likely been at Kelly's residence, consistent with the activity reported by Kik during the time of communication with the OCE.

24.     On September 27, 2023, a search warrant was served to Verizon Wireless for BROM's phone records associated with (316) 364-0650. Pursuant to the search warrant, records indicated BROM's cell phone signal hit consistently on Verizon cell towers in the Humboldt, Kansas area within the previous months leading up to the service of the search warrant. Upon further investigation, it was discovered an address of 711 Pine St., Humboldt, Kansas 66748 was associated with BROM.

25.     On or about November 29, 2023, surveillance was initiated in the area of 711 Pine St., Humboldt, Kansas 66748. A white male, identified as BROM, was observed to be living at the residence and is believed to be the only individual residing at the residence. Through open-source database searches, the residence is owned by Loren and Janet Korte.

26.     A red 2003 Ford F-350 bearing Kansas license plate '128PXC' and a white 2010 Ford F-150 bearing Kansas license plate '152NBK' have consistently been observed parked in the driveway behind the residence. Both vehicles are registered to Matthew Korte (Korte), residing at 717 S 7th St., Humboldt, Kansas 66748. This residence is located directly south of the residence. A black enclosed trailer with markings of "Korte Construction/Remodel 620-228-8637" has also consistently been parked in the driveway between the Pine Street residence and Korte's residence. BROM has been seen driving both vehicles with the trailer attached at times.

27.     BROM is normally seen to be wearing clothing indicating he works or is associated with "Korte Construction/Remodel". Pursuant to legal process served on (620) 228-8637, it was determined the subscriber is Korte and BROM is one of Korte's top contacts with (316) 364-0650. A second white male has been seen in the area of the vehicles with BROM on several occasions. It is believed the second white male is Korte, due to coming and going from the 717 S 7th St. address directly south of the Pine Street residence.

### Execution of a Search Warrant at the 711 Pine Street residence

28.     On January 18, 2024, I applied for and obtained a search warrant for the 711 Pine Street residence.

29.     On January 19, 2024, agents executed the search warrant at the 711 Pine Street residence. Because BROM did not answer the door and was not responsive to announcements of their presence, agents called the BROM's phone using **(316) 364-0650**. Brom answered, and when SA Molly Ohnoutka advised it was the FBI and asked him to come to the front door, BROM hung up. SA Ohnoutka attempted to call BROM back but received no answer.

30.     Korte approached agents and advised that he had not seen BROM since BROM had gone to Wichita for the holidays.

31.     While agents were conducting the search, BROM repeatedly called SA Ohnoutka from the **(316) 364-0650.** SA Ohnoutka answered and advised the case agent would call him. SA Bayles called BROM at **(316) 364-0650** shortly thereafter. BROM asked questions about what was going on. SA Bayles made arrangements to meet BROM at the FBI Wichita Resident Agency at 2:00pm on January 19, 2024, to discuss the search warrant. During the call, SA Bayles did not tell BROM the crime under investigation or the basis for the search warrant.

32.     BROM called SA Bayles from **(316) 364-0650** shortly after making arrangements to meet at 2:00pm. BROM requested the meeting be rescheduled for "next week" so BROM could bring his lawyer with him. SA Bayles provided BROM with her contact information and advised to have BROM's attorney contact SA Bayles to set up a meeting.

### Connecting BROM to 1838 S Topeka Street

33.     On or about January 24, 2024, a search warrant was served to Verizon for GPS location on **(316) 364-0650** and a pen register/trap and trace. Verizon provided longitude/latitude information as well as a various of ranges in which the cell phone associated with **(316) 364-0650** is located. When plotted on a map, the latitude/longitude data points are consistently in the area of the 1838 S Topeka Street, Wichita, Kansas 67211. This is the address in which Poston resides as well as the same residence Korte indicated BROM was last known to be at.

34.     On or about February 9, 2024, FBI Agents conducted physical surveillance in the vicinity of 1838 S Topeka Street, Wichita, Kansas 67211. BROM was seen wearing jeans and a gray hooded sweatshirt on the front porch of the residence for several minutes. BROM walked in and out of the house several times over the course of approximately one hour. BROM put what appeared to be a tool bag in the back of a silver SUV and left the residence. Agents observed the vehicle to be a silver 2014 Mitsubishi Outlander, bearing Kansas license plate '366KZB'. The

vehicle returned to Melissa Poston at 1838 S Topeka Street, Wichita, Kansas 67211. Agents positively identified BROM on the front porch of that residence as well as operating the silver 2014 Mitsubishi Outlander.

### Execution of Federal Arrest and Search Warrant at 1838 S Topeka Street

35.     On or about February 16, 2024, FBI Agents executed a federal arrest warrant and a federal search warrant at 1838 S Topeka Street, Wichita, Kansas 67211. BROM was arrested and the cell phone in his possession at the time of his arrest was seized.

36.     On or about February 16, 2024, BROM's cell phone was taken to the Kansas Internet Crimes Against Children Unit for a digital extraction to be conducted. The digital extraction revealed BROM factory reset his phone on January 19, 2024. This was the day the search warrant was executed at the residence in Humboldt, Kansas, referenced in paragraph 29. The digital extraction also revealed six Google searches conducted between January 19, 2024, and January 21, 2024. The following searches were conducted on January 19, 2024:

   a.   "how can m phone be linked to onlin…"

   b.   "why would fbi investigate me for chi…"

The following searches were conducted on January 20, 2024:

   c.   "what happens after a search warrant is executed"

   d.   "federal search warrant didn't find wh…"

   e.   "what happens when fbi get a searc…"

The following searched were conducted on January 21, 2024:

   f.   "nothing found after search warrant is…"

37.     On or about February 16, 2024, BROM's cell phone was taken to the Kansas Internet Crimes Against Children Unit for a digital extraction to be conducted. The digital extraction revealed BROM factory reset his phone on January 19, 2024. This was the day the search warrant was executed at the residence in Humboldt, Kansas, referenced in paragraph 29.

### Additional NCMEC CyberTip associated with BROM

38.     The digital extraction also revealed a Google account associated with BROM's phone of 'brob77387@gmail.com'. After the Google account was discovered, investigators searched for NCMEC CyberTips related to the Google account.  A NCMEC CyberTip (182540218) reported by Facebook was discovered that was associated with the Google account 'brob77387@gmail.com'. Further information within the CyberTip provided Facebook account name 'Bro Bro' with a screen name of 'Bro.Bro.6969', User ID 100044568663151 (TARGET ACCOUNT), and associated email address brob77387@gmail.com. The CyberTip reported on or about December 13, 2023, the user of TARGET ACCOUNT received one video depicting a pubescent minor involved in a sexual act from another Facebook user via Facebook Messenger. During the time the Facebook user sent TARGET ACCOUNT the video, TARGET ACCOUNT responded immediately following the video, "Mmmmmm I'll give it to you baby. And I'll let my friend fill you up immediately after I do with his cum too" and "My cock is very thick it would stretch your tiny little pussy so much".

39.     On or about December 16, 2023, Facebook estimated the location of the TARGET ACCOUNT to be in Wichita, Kansas. Further investigation of TARGET ACCOUNT contained similar information related to BROM that was found on other social media accounts such as previous places lived and Facebook "friends." The Google account located on Brom's cell phone was the same Google account used for the TARGET ACCOUNT. A Google Account can only be

created one time. If another individual attempts to create a Google account that is already being used, the individual will be notified that Google account is already taken and will be prompted to create a different account name.

### Brom's Indictment

40.     On February 21, 2024, BROM was indicted by Grand Jury in the United States District Court-District of Kansas for one count of **Distribution of Child Pornography [18 U.S.C. § 2252A(a)(2)].**

## CHARACTERISTICS COMMON TO INDIVIDUALS
## WITH A SEXUAL INTEREST IN CHILDREN

41.     Based upon my knowledge, experience, and training in child exploitation and child sexual abuse material (CSAM) investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals with a sexual interest in children. These characteristics particularly apply to individuals involved in possessing or distributing child pornography online, including those accessing websites whose primary content is child pornography or child sexual abuse material. These common characteristics include that the individuals:

        a.    Individuals who seek, collect, and trade child pornography typically have a sexual interest in children and receive sexual gratification from viewing children engaged in sexual activity or in sexually suggestive poses, or from literature describing such activity.

        b.    These individuals may collect or view sexually explicit or suggestive materials, in a variety of media, including in hard copy and/or digital formats. These individuals oftentimes use these materials for their own

sexual arousal and gratification. They may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse or groom a child to participate in sexual activity, or to demonstrate desired sexual acts to a child. They may also use toys, games, costumes, sexual clothing, sexual paraphernalia, and children's clothing to lure or entice children. They may keep "trophies" or mementos of sexual encounters with children, or items that they use to gratify a sexual interest in children, such as by collecting children's underwear or other items belonging to a child.

c.  These individuals may take photographs that either constitute child pornography or indicate a sexual interest in children (such as upskirt photos), and may do so by using cameras, video cameras, web cameras, and cellular telephones. Such images and videos may be taken with or without the child's knowledge. This type of material may be used by the person to gratify a sexual interest in children.

d.  These individuals maintain their collections in a safe, secure, private, and accessible environment, frequently making use of digital devices. However, many child pornographers make use of hard-copy printed material. Both digital and hard copy format child pornography is usually hidden so that the material is not found by other members of the residence or by anyone who might enter the home. Such hiding places could include but are not limited to garages, sheds, attics, vehicles, bags, and pockets. Digital files and devices may be password protected, encrypted, or otherwise protected.

e.     These individuals often maintain their collections of child pornography and other materials indicating a sexual interest in children for a long period of time—commonly over the course of several years. These collections are also frequently maintained despite changes in residence or the acquisition of different or newer computer devices.

f.     Many of these individuals correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, screen names, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child sexual exploitation. Such correspondence may take place, for example, through online bulletin boards and forums, Internet-based chat messaging, email, text message, video streaming, letters, telephone, and in person. In some cases, these individuals may have joint involvement in child sexual exploitation activities with others within their household or with whom they share a close relationship (e.g., brothers/siblings dating partners, or coworkers).

**BROM displays common characteristics**

42.     BROM has had a known sexual interest in children since 2021 when the Kansas ICAC opened an investigation after receiving a CyberTip from NCMEC. BROM continued with similar interests when coming into contact with a FBI undercover employee in February 2023 on a Kik group known for individuals with a sexual interest in children. BROM elaborates on plans

to travel to California to engage in sexual activities with the undercover's purported minor daughters. Within the communication, BROM sent images and videos containing CSAM to the undercover that he described as being sent to him at his direction. More recently in December 2023, a CyberTip was reported on a Facebook account believed to be associated with BROM. Based on these circumstances, BROM demonstrates several of the above characteristics, making it more probable that evidence of BROM's involvement in child sexual abuse/exploitation material will be found within the TARGET ACCOUNT.

## **BACKGROUND ON FACEBOOK**

43. Meta Platforms, Inc. owns and operates a free-access social networking website known as "Facebook" that can be accessed at http://www.facebook.com.

44. Facebook allows users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

45. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request". If the recipient of a "Friend Request" accepts the request, then the two users with become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Likewise, users can "unfriend" (remove)

previously "friended" users, as well as "unfollow" or "block" certain profiles. Facebook retains records of these interactions in the profile's "connections" in the "activity log" for the profile.

46.     Facebook offers users a variety of ways to interact with other users, frequently through the posting of pictures or video or "status" updates about their whereabouts and actions. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

47.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. This type of information can be critical to determining who was the user at a particular moment – for instance, a user who posts a "selfie" with metadata indicating the picture was taken immediately preceding the posting, and posted from the user's home reveals both their identity, the timing of the use of the device, and their location, all of which helps confirm who was using the account at that moment. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted.

48.     Facebook users can exchange private messages on Facebook with other users. Facebook has a chat feature (Messenger) that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

49.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding or blocking someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

50.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information, News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook suer identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

51.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type or action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

52.     Social networking providers like Meta Platforms, Inc. typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users

may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta Platforms, Inc. typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

53.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Meta Platforms, Inc. can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messages logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical locations associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and

Facebook "Friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

54.     Therefore, the computers of Meta Platforms, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

55.     While this account is believed to be operated by BROM, it is important for investigators to collect evidence of user attribution to rebut any claims that, at the time of a particular communication or message, the account was operated by someone else. For this reason, your Affiant seeks evidence beyond mere messaging, to include subscriber information, IP logs, photos, and items outlined in Attachment B.

## CONCLUSION

56.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe on the computer systems in the control of Meta Platforms, Inc. there exists evidence of crime, Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A. Accordingly, a search warrant is requested.

57.     This Court has jurisdiction to issue the request warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(C)(1)(A). Specifically, the court is a "district court of the United States that has jurisdiction over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i).

58.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer not required for the service or execution of this warrant.

Brittany A. Bayles
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically this ___22nd___ day of March, 2024.

HONORABLE BROOKS G. SEVERSON
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to be Searched**

This warrant applies to information associated with the Facebook account as follows:

URL:**http://www.facebook.com/Bro.Bro.6969**
User ID: **100044568663151**
Account Name: **Bro Bro**

that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a

company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for each user ID listed in Attachment A:

   a. All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

   b. All activity logs for the account and all other document showing the user's posts and other Facebook activities;

   c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

   d. All profile information; News Feed information; Status updates; links to videos, photographs, articles, and other items; notes; wall postings; friends lists, included the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the suer's access and use of Facebook applications;

   e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

   f. All "check ins" and other location information;

   g. All IP logs, including all records of the IP addresses that logged into the account;

     h.     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

     i.     All information about the Facebook pages that the account is or was a "fan" of;

     j.     All past and present lists of friends created by the account;

     k.     All records of Facebook searches performed by the account;

     l.     The types of service utilized by the user;

     m.     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

     n.     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

     o.     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## I.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A, involving Austin Glenn Brom including, for the account or identifier listed on Attachment A, information pertaining to the following matters:

     a.     Any and all communications related to the crimes under investigation;

     b.     Evidence indicating the Facebook account owner's state of mind or motivation as it relates to the crimes under investigation;

     c.     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s);

d. The identity of the person(s) who sent to and/or received communications from the Facebook account regarding matters referenced in (a) above, including records that help reveal whereabouts.